IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CV-209-GCM-DCK

| REBECCA ANN PLYLER, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 16) and Defendant's "Motion For Summary Judgment" (Document No. 18). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Rebecca Ann Plyler ("Plaintiff" or "Plyler"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Security Income disability benefits. (Document No. 1). On or about September 7, 2011, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning January 1, 2009. (Administrative Transcript ("Tr.") 562, 644, 690-696). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on November 17, 2011,

and again after reconsideration on February 21, 2012. (Tr. 562, 662-670, 674-678). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties.
> We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 674).

Plaintiff filed a timely written request for a hearing on or about April 13, 2012. (Tr. 562, 679-81). On November 7, 2013, Plaintiff appeared and testified at a hearing before Administrative Law Judge Clinton C. Hicks ("ALJ"). (Tr. 562, 604-630). In addition, Kathryn C. Mooney, a vocational expert ("VE"), and Charles Ali Everage, Plaintiff's attorney, appeared at the hearing. (Tr. 562, 604).

The ALJ issued an unfavorable decision on December 11, 2013, denying Plaintiff's claim. (Tr. 559-573). On January 21, 2014, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on March 20, 2015. (Tr. 1-8, 498-499). The Appeals Council noted that it had considered additional evidence, but found that the information did not provide a basis for changing the ALJ's decision. (Tr. 2) (citing Tr. 804-807, 2807-2881, 2882-2890, and 2891-2895). Moreover, the Appeals Council determined "that there was no abuse of discretion and that no other basis exists to grant review in this case." (Tr. 3). The December 11, 2013 ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

2

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on May 7, 2015. (Document No. 1). On June 1, 2015, the undersigned was assigned to her case as the referral Magistrate Judge.

"Plaintiff's Motion For Summary Judgment" (Document No. 16) and "Memorandum in Support…" (Document No. 17) were filed September 11, 2015; and Defendant's "Motion For Summary Judgment" (Document No. 18) and "Memorandum in Support…" (Document No. 19) were filed November 3, 2015. "Plaintiff's Reply Brief…" (Document No. 20) was filed November 20, 2015. Defendant filed her "Motion For Leave To File Surreply Memorandum" (Document No. 21) and submitted "Defendant's Surreply Memorandum" on November 25, 2015. The undersigned granted Defendant leave to file "Defendant's Surreply Memorandum" on November 30, 2015. (Document No. 23).

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.

3

2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.    DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 7, 2011, the date the application for Supplemental Security Income was filed, and the date of his decision.[1]  (Tr. 562). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 572-573).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since September 7, 2011, her application date. (Tr. 564). At the second step, the ALJ found that type II diabetes mellitus, chronic obstructive pulmonary disease ("COPD"), obstructive sleep apnea, hypertension, mitral regurgitation, degenerative disc disease, degenerative joint disease/rotator cuff tendinosis, morbid obesity, and status-post right knee arthroscopy, were severe

5

impairments.² Id. At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 564-565).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform sedentary activity (lift and carry 10 pounds occasionally and stand and/or walk 2 hours in an 8-hour day …), with the following limitations:

> she needs to stand in place once per hour for 5 minutes and she needs a cane to ambulate but not for performance of the job. She should avoid concentrated exposure to fumes and irritants.

(Tr. 565). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff has no past relevant work.³ (Tr. 571). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 572). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included food and beverage order clerk, nut sorter, and packaging/filling machine tender. Id.

---

² The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).
³ Plaintiff curiously, and incorrectly, states that the ALJ "found that the plaintiff retained the residual functional capacity to perform her past relevant work and was therefore not disabled." (Document No. 17, p. 3).

Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between September 7, 2011, and December 11, 2013. (Tr. 572-573).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to properly assess Plaintiff's credibility; (2) the ALJ did not correctly determine Plaintiff's RFC; and (3) the ALJ failed to develop the medical record. (Document No. 17). The undersigned will discuss each of these contentions in turn.

A.   **Plaintiff's Credibility**

The ALJ opined that after careful consideration of the evidence, Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms; however, Plaintiff's "statements concerning intensity, persistence and limiting effects of these symptoms are *not entirely credible* for the reasons explained." (Tr. 566) (emphasis added).

In her first assignment of error, Plaintiff argues that the ALJ's decision is not supported by evidence and does not apply the correct legal standard in determining her credibility. (Document No. 17, p. 6) (citing SSR 96-7p; Craig v. Chater, 76 F.3d 585, 589 (4th Cir. Feb. 23, 1996)). SSR 96-7p provides:

> 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> 5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are

> described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *1-2. Plaintiff suggests that the ALJ failed to follow agency rules and procedures in determining credibility. Id. at 7 (quoting Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).

Specifically, Plaintiff argues the ALJ improperly relied on Plaintiff's failure to follow prescribed therapy, and daily activities that were inconsistent with a totally disabled individual, as a basis for finding her not credible. (Document No. 17, p.8). Plaintiff contends that such reliance was improper pursuant to SSR 96-7p, suggesting that the ALJ failed to consider Plaintiff's explanation(s) or other information of record. Id. Plaintiff argues that the ALJ

> must not draw any inferences about a Plaintiff's symptoms and h[er] functional effects from a failure to seek or pursue regular medical treatment without first considering any explanation that the claimant may provide, or other information on the record, that may explain the infrequent or irregular medical visits or failure to seek medical treatment.

Id. (citing SSR 96-7p; Lovejoy v. Heckler 790 F.2d 1114, 1117 (4th Cir. 1986)).

Without any citation to the record, Plaintiff concludes that "Plaintiff gave extensive testimony of the factors detailed in SSR 96-7p," and that her testimony on these topics was consistent with the underlying medical record. (Document No. 17, p.9). Plaintiff contends that the ALJ compared Plaintiff's testimony to his RFC finding, rather than comparing Plaintiff's testimony to the entire record, and thus, the ALJ's findings are insufficient to find Plaintiff not credible. Id.

8

In response, Defendant asserts that the ALJ properly evaluated Plaintiff's credibility. (Document No. 19, p.5). Defendant notes that when assessing credibility, "the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged," and if there is, "then the ALJ evaluates the intensity and persistence of the symptoms to determine the extent to which they limit the individual's capacity for work. (Document No. 19, p.5) (citing 20 C.F.R. § 416.929(b)-(c)). Defendant argues that the ALJ correctly followed this two-step process, and in doing so the ALJ considered the evidence of record and the following regulatory factors: daily activities; the location, duration, frequency, and intensity of symptoms; precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of medications used to alleviate pain or symptoms; and other treatments used to relieve pain or symptoms." Id. (citing Tr. 565-570; 20 C.F.R. § 416.929(c)).

First, Defendant notes that regarding daily activities, the ALJ considered Plaintiff's testimony and found that she "engages in activities of daily living that are inconsistent with those of a totally disabled individual." (Document No. 19, pp.5-6); (Tr. 566-569). Moreover, the ALJ decision recognizes inconsistencies between Plaintiff's hearing testimony and other evidence in the record. Id. The ALJ recounted that Plaintiff testified that she does not do any cooking or shopping [or cleaning], and that her son sometimes has to help her with her bra and help her get up. (Document No. 19, p.5) (citing Tr. 566; see also (Tr. 618-619). But then the ALJ noted that

> In a Function Report completed in October 2011, the claimant reported she got both her daughter and her nephew up for school, cooked and prepared meals for her daughter, did laundry, mowed the lawn on a riding lawnmower, and went shopping for groceries. She said she could go out alone but she did not like to. She reported no problems with personal care including dressing, bathing, hair care, shaving, eating, and using toilet . . . .

(Tr. 569) (citing Tr. 730-737).

9

At the same time, the ALJ observed that in July 2011 Plaintiff had "attributed her recent weight loss to being more active with volunteer work," and in January and March 2012 she had admitted being "involved in a work force program." (Tr. 569-570) (citing Tr. 1298, 2797-2806; 2214-2280); see also (Document No. 19, pp.5-6). The ALJ further observed that Plaintiff was interested in starting her own pet sitting business, and that "[a]s recently as June 2013, she was mowing the lawn when she stepped into a hole." (Tr. 570) (citing Tr. 2797 -2806; 2422-2472).

Next, Defendant describes the ALJ's attention to Plaintiff's alleged symptoms. (Document No. 19, pp.6-7). Defendant observes that the ALJ recognized Plaintiff's testimony as to her alleged symptoms of fatigue, shortness of breath after walking short distances, dizziness at least once or twice a day, etc. (Document No. 19, p. 6) (citing Tr. 565); see also (Tr. 610). Defendant further observes that the ALJ also considered allegations by Plaintiff regarding her diet, pain in wrists despite carpal tunnel surgery, back pain, and shoulder bursitis. (Document No. 19, p.6) (citing Tr. 565-566).

The ALJ noted that Plaintiff testified at the hearing that even when she was compliant with her medication, she experienced high levels of blood sugar that made her tired and dizzy. Id. (citing Tr. 565); see also, (Tr. 611-612). As Defendant asserts, the ALJ also noted that Plaintiff testified that she had been told that smoking aggravates her COPD, and that she was told to cut down and/or to quit. Id. (citing Tr. 565); see also (Tr. 613). She further testified that she had recently reduced her smoking from about two (2) packs a day, to about half a pack. (Tr. 565, 614). However, the ALJ later notes that in March 2012, Plaintiff told her treating physician she had "no intention of quitting tobacco." (Document No. 19, p. 6) (citing Tr. 566) (quoting Tr. 2218).

Defendant then noted the ALJ's consideration of Plaintiff's current medications and treatments. (Document No. 19, pp. 6-7) (citing Tr. 565-68). Medications included insulin,

Gabapentin and other non-narcotic medication, and medication for hypertension. Id. Treatment included use of a continuous positive airway pressure ("CPAP") machine, blood sugar testing, and carpal tunnel surgery. Id. Recommended treatments that Plaintiff did not pursue include: keeping blood sugar logs; quitting smoking; eating a diabetic diet; seeing a nutritionist; pulmonology counseling; post wrist surgery occupational therapy; and physical therapy for alleged back pain. (Document No. 19, p. 7) (citing Tr. 566-568).

Defendant concludes the ALJ thoroughly considered the required regulatory factors for assessing credibility, as described above. Nevertheless, Defendant goes on to address additional inconsistencies, and non-compliance, further supporting the ALJ credibility determination.

The ALJ noted Plaintiff's "well-documented" history of non-compliance with recommended treatment by Southern Piedmont Primary Care, including the following dates: (12/8/10; 1/5/11; 8/1/11; 9/21/11; 10/15/12; 10/18/12; 1/11/12; 3/9/12; 10/15/12). See (Document No. 19, p.7) (citing Tr. 566) (citing 1287-1350, 1997-2071, 2214-2280, 2375-2407). As discussed above, Plaintiff testified that her blood sugar levels were still high when she was compliant with medication; however, the ALJ later noted that Plaintiff reported "significant improvement" to her physician when she was compliant with medication. (Tr. 566) (citing Tr. 2222). The ALJ also noted that Plaintiff had claimed she could not afford her medications, but that her treating physician, Dr. Jacques Laguere, had pointed out that she spent $75 per month on cigarettes. Id. Ultimately, Dr. Laguere **discharged Plaintiff from his practice because she was non-compliant** with several aspects of her healthcare. (Tr. 566) (citing Tr. 2214-2280). Specifically, Dr. Laguerre stated on a medical report dated March 9, 2012, "[patient] non-compliant [] several aspects of her health care. Advised patient that I could not continue our Doctor patient relationship in good faith." (Tr. 2218).

11

The ALJ further observed that after Dr. Laguerre discharged Plaintiff, her next provider, Dr. Gwendolyn Perkins of Circle Medical, also noted that Plaintiff did not follow a diabetic diet or exercise regimen, and there was no evidence she followed up with the recommendation for a nutritionist. (Tr. 566) (citing 2375-2407).

Regarding Plaintiff's persistent non-compliance with prescribed treatments, the ALJ opined:

> An individual who fails to follow a prescribed course of remedial treatment without a good reason will not be found disabled. 20 C.F.R. §§ 404.1530(b), 416.930(b). Her failure to follow through with proper insulin and medication administration, diet, and other weight loss measures are all arguably forms of noncompliance. Furthermore, the record shows that when the claimant was compliant with her medication regimen in late 2011, her blood sugars were controlled. **A disorder which is controllable with medication is not "disabling."** Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986), citing Purdham v. Celebreeze, 349 F.2d 828 (4th Cir. 1965).

(Tr. 567) (emphasis added). Thus, the ALJ appears to opine that not only does Plaintiff's non-compliance undermine her credibility, but it also supports a finding that she is not disabled because she had failed to attempt to control disorders that are controllable with medication. Id.

Defendant also observes the ALJ's finding that

> claimant's **credibility is further undermined** by her lack of any significant work activity in the last 15+ years. She testified that she had no reason to work, as her husband did not want her to work. At the very least, her poor work history suggests that there may be reasons other than her impairments for her current unemployment.

(Document No. 19, pp. 7-8) (citing Tr. 570). , 619-20, 703). Defendant notes that Plaintiff testified that she stopped working in 2000 when her daughter was born, which undermines her assertion that her impairments were the reason she stopped working. (Document No. 19, p.8) (citing Tr. 619-620, 703, 711). Defendant argues that "the Social Security Act is very clear that the inability

to work must be caused by a medically determinable medical impairment and not some other cause. Id. (citing 42 U.S.C. § 423(d)(1)(A).

In reply, Plaintiff declines to rebut, or even mention, Defendant's arguments regarding the ALJ credibility analysis. (Document No. 20).

The undersigned finds that the ALJ supported his credibility determination with substantial evidence. The ALJ first considered Plaintiff's testimony as to her symptoms and conditions. (Tr. 565-66). The ALJ then considered Plaintiff's testimony with respect to her daily activities. (Tr. 566). The undersigned is persuaded by Defendant's argument that the ALJ extensively considered various discrepancies between Plaintiff's testimony and the record evidence. The ALJ carefully documents the history of Plaintiff's noncompliance with treatment. (Tr. 566) (citing Tr. 1287-1350, 1997-2071, 2214-80, 2375-2407). Contrary to Plaintiff's argument that the credibility determination here was deficient, the undersigned finds it was quite thorough and the ALJ identified ample support for finding Plaintiff less than fully credible.

**B.     Residual Functional Capacity**

Next, Plaintiff challenges her assigned RFC. (Document No. 17, p. 10). Plaintiff argues that the ALJ failed to properly determine her RFC on two grounds. First, she argues that the ALJ did not perform a function-by-function assessment to determine Plaintiff's RFC. (Document No. 17, pp. 12) (citing Mascio v. Colvin, 780, F.3d 632 (4th Cir. 2015)). Plaintiff also challenges the ALJ's finding that Plaintiff needed a cane to ambulate, but not for performance of sedentary work. (Document No. 19, p. 11).

In response, Defendant contends that the ALJ's decision regarding Plaintiff's use of a cane was supported by substantial evidence, as Plaintiff testified to using a cane outside of her house,

but no medical records recommended use of a cane for work. (Document No. 19, pp. 10-11) (citing Document No. 17, p. 11; Tr. 565, 615, 2361, 2364).

Defendant also asserts that the ALJ did perform a function by function assessment. (Document No. 19, p.11). Defendant notes that the ALJ considered Plaintiff's ability to sit, stand, walk, lift, and carry in his decision, and that Plaintiff does not allege any limitation in pushing and pulling. Id. (citing Tr. 565, 638, 652). Defendant argues that "the ALJ conducted a complete function-by-function analysis and explained why he deviated in parts, and to Plaintiff's benefit, from Dr. Henry's assessment of Plaintiff's abilities." (Document No. 19, p.12). Dr. Lionel Henry had concluded that Plaintiff could perform medium work, but the ALJ – finding Plaintiff "partially credible" – determined Plaintiff should be limited to sedentary work. (Tr. 571).

Defendant also effectively distinguishes this case from Mascio, noting that unlike Mascio there is no unaddressed or conflicting evidence here. (Document No. 19, p.12). Rather, the ALJ's analysis here is thorough and consistent with the requirements of Mascio. The undersigned agrees that the ALJ appears to conduct a satisfactory function by function assessment for Plaintiff, considering each of the functions pertaining to Plaintiff's alleged disability. (Tr. 565-571).

In reply, Plaintiff argues for the first time that counsel for Plaintiff submitted a medical record on February 19, 2013, but this was erroneously excluded from the full record of the case. (Document No. 20, pp.1-2; Document No. 20-1). Plaintiff contends this medical statement is probative because Plaintiff's treating physician prohibited Plaintiff from lifting more than 10 pounds, walking or standing more than 2 hours, and opined that Plaintiff's ability to sit was impaired requiring alternating positions. Id. Plaintiff goes on to argue that the ALJ's RFC finding fails to adequately account for Plaintiff's alleged discomfort sitting. (Document No. 20, pp.2-3).

In her sur-reply, Defendant contends that Plaintiff makes an improper and untimely argument that this matter should be remanded based on Dr. Perkins' February 15, 2013 statement. (Document No. 22, p.2). Defendant argues that too much time has passed, and Plaintiff should have presented this evidence to the Appeals Council. (Document No. 22, p.3).

Even if this "new evidence" was considered by the ALJ, the undersigned is not persuaded it would have changed his opinion. In fact, Dr. Perkins' observations seem to be largely consistent with the ALJ's RFC finding. Compare (Tr. 565 and Document No. 20-1); see also (Tr. 568). "Plaintiff's Reply Brief…" also goes beyond the issues raised in Defendant's motion and memorandum. See "Social Security Briefing Order," Case No. 3:13-mc-198-FDW, Document No. 1 (W.D.N.C. Dec. 23, 2013).

The undersigned reiterates that the burden is on Plaintiff to produce sufficient evidence to formulate an appropriate RFC. Pass, 65 F.3d at 1203. As Defendant argues, Plaintiff "has not articulated what limitations she has over and above those the ALJ included in the RFC." (Document No. 19, p.13). In short, the undersigned finds that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

**C.    Developing The Medical Record**

Next, Plaintiff makes a cursory argument that the ALJ failed to fully develop the medical record. (Document No. 17, p.12). Plaintiff claims that her dizziness and drowsiness as a side effect of medication, her frequent need for rest, and an assessment of her medically determinable impairments on her ability to perform physical activities, were improperly excluded from consideration in the ALJ's decision. Notably, Plaintiff's final argument is not supported by *any* citation to the record. (Document No. 17, pp.12-13). Although she suggests that she has "indicated

in her documentation" support for these allegations, she offers no support, and no explanation. (Document No. 17, p.12).

In response, Defendant asserts that Plaintiff is incorrect. (Document No. 19, p.15). Defendant notes that the ALJ addressed Plaintiff's fatigue and dizziness. Id. (citing Tr. 565). Specifically, the ALJ noted: "[s]he gets dizzy at least once or twice a day for 5 to 10 minutes" and "[w]hen her sugar is super high, she is tired and dizzy." (Tr. 565); see also (Tr. 610). When asked whether any of her medications caused side effects, Plaintiff testified that "[t]he Metformin does . . . when I take it I get like a little sleepy, but that could be due from sugar being up too." (Tr. 610).

Defendant persuasively argues that Plaintiff herself is not even sure if her side effects are attributable to her medication. (Document No. 19, p.15). Moreover, being a "little sleepy" and experiencing such limited dizziness is not "significant" to the degree it would interfere with work-related activity. Id.

The undersigned agrees that Plaintiff's final argument is without merit. Moreover, Plaintiff's reply again fails to provide any rebuttal or elaboration on this issue that would assist the Court. (Document No. 20).


As a final note, the undersigned observes that Plaintiff's "Motion For Summary Judgment" attempts to insert a "motion to reopen" and amend Plaintiff's alleged onset date of disability to September 21, 2010. (Document No. 17, p.3). Plaintiff offer little explanation or support for such a "motion" contained in a summary judgment motion. Id. Moreover, Defendant persuasively argues that this Court's jurisdiction is limited to review the "final decision of the Commissioner made after a hearing" for substantial evidence. (Document No. 19, p.13) (citing 42 U.S.C. §

405(g). For the reasons stated by Defendant, the undersigned agrees that Plaintiff's "motion to reopen" her disability onset date is improper and untimely. (Document No. 19, pp.13-14).

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 16) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 18) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889

F.2d 1363, 1365 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: August 12, 2016

David C. Keesler
United States Magistrate Judge